UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SIMON MENGELE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:15-cv-3934-B-BN |
| | § | |
| AT&T SERVICES INC., | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

**ESTES THORNE & CARR PLLC**

*/s/ Amy M. Stewart*
**AMY M. STEWART**
State Bar No. 24060660
astewart@estesthornecarr.com

**LAUREN M. LEIDER**
State Bar No. 24094863
lleider@estesthorncarr.com

3811 Turtle Creek Blvd., Suite 2000
Dallas, Texas 75219
Telephone:  (214) 599-4000
Facsimile:  (214) 599-4099

**ATTORNEYS FOR DEFENDANT**

## TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................ii

TABLE OF AUTHORITIES .......................................................................................iv

I.   SUMMARY OF ARGUMENTS...........................................................................1

II.  SUMMARY JUDGMENT PROOF ......................................................................2

III. STATEMENT OF UNDISPUTED FACTS .........................................................3

    A.  Mengele Worked in AT&T's Technology Development Program. ...................3

    B.  Mengele Struggled in the TDP-TO Program Which Led to A Poor Evaluation ................4

    C.  Mengele Receives His Evaluation ..................................................................6

    D.  AT&T Institutes a Coaching Action Plan and Performance Improvement Plan to Help

    Mengele Meet His Obligations .........................................................................7

    E.  Mengele Requested to See Jackson's Manager Regarding His Evaluations. ....................8

    F.  Mengele's Claims Are Investigated..................................................................9

    G.  AT&T Terminates Mengele's Employment Because He Fails to Improve His Work

    Performance and Attendance Issues and He Files an EEOC Claim. ........................................10

IV.  SUMMARY JUDGMENT- STANDARD OF REVIEW.....................................12

V.   LEGAL ARGUMENTS AND AUTHORITIES ..................................................12

    1.  Plaintiff cannot prevail on his race/national origin discrimination claim..........................12

        A.  Mengele Was Not Qualified As The Senior Specialist Network Design Engineer. ......13

        B.  There Is No Evidence Others Not In The Protected Class Were Treated

        More Favorably ..............................................................................................13

        C.  Alternatively, AT&T's Decision To Place Mengele's Rotation On Hold Until He

        Improved His Performance Is Not Redressible Under Title VII ...........................................14

  D. AT&T Had a Legitimate Non-Discriminatory Reason for Terminating Mengele......... 15

 2. Mengele cannot prevail on his retaliation claim................................................................ 17

VI.  PRAYER........................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Alvarado v. Texas Rangers*,
   492 F.3d 605 (2007) .......................................................................................................... 20

*Cannon v. St. Paul Fire & Marine Ins. Co.*,
   2005 WL 1107372, at *3 (N.D. Tex. May 6, 2005) .......................................................... 20

*Davis v. Dallas Area Rapid Transit*,
   383 F.3d 309 (5th Cir.2004) ............................................................................................. 20

*Douglass v. United Servs. Auto. Ass'n*,
   79 F.3d 1415, 1429 (5th Cir. 1996) .................................................................................. 17

*Garrett v. Celanese Corp.*,
   2003 WL 22234917, at *3 (N.D. Tex. Aug. 28, 2003), aff'd, 102 Fed. Appx. 387 (5th Cir.
   2004) ................................................................................................................................. 20

*Grimes v. Tex. Dept. of Mental Health and Mental Retardation*,
   102 F.3d 137, 139-140 (5th Cir. 1996) ............................................................................ 17

*Int'l Shortstop, Inc. v. Rally's, Inc.*,
   939 F.2d 1257, 1266 (5th Cir. 1991) ................................................................................ 18

*McDonnell Douglas v. Green*,
   411 U.S. 792, 802 (1973) .................................................................................................. 21

*Medina*,
   238 F.3d at 681 ................................................................................................................. 21

*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*,
   245 F.3d 507, 512-13 (5th Cir. 2001) .............................................................................. 18

*Pegram v. Honeywell, Inc.*,
    361 F.3d 272, 281 (5th Cir. 2004) ................................................................................ 18

*Raytheon Co. v. Hernandez*,
    540 U.S. 44, 50 n.3 (2003) ........................................................................................ 21

*Septimus v. Univ. of Houston*,
    399 F.3d 601, 610 (5th Cir. 2005) ................................................................................ 22

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502, 515 (1993) ..................................................................................... 21, 24

*Tex. Dept. of Cmty. Affairs v. Burdine*,
    450 U.S. 248, 254 (1981) ........................................................................................ 21

*West v. Nabors Drilling USA, Inc.*,
    330 F.3d 379, 384 (5th Cir. 2003) ................................................................................ 24

# I.    SUMMARY OF ARGUMENTS

1.     This is a classic case of an employee who was terminated due to his well documented and long standing poor performance and seeks to blame his employer.  Mengele claims AT&T discriminated against him based upon his national origin in violation of Title VII on two grounds: (1) the company delayed his lateral move to a new position until he successfully completed a Coaching Action Plan ("CAP") and Performance Improvement Plan ("PIP"); and (2) Mengele was terminated after he complained to management that his direct supervisor's negative evaluations were based on her bias against Africans, not his actual work performance.

2.     The evidence will establish Mengele failed to demonstrate traits that would indicate preparedness to rotate to the next position in the company's entry level program for recent engineering graduates.  Specifically, Mengele failed to timely turn in work assignments, internal clients complained about his work product, and he was routinely late to team meetings and conference calls.  Mengele bears the burden of proving the reasons presented are pretexts for racial/natural origin discrimination or retaliation.  Mengele has no evidence that the issues noted by his supervisors were false or that the actions of which he complains of were motivated by his natural origin/race retaliation, or any other improper reason.

3.     Further, Mengele has failed to provide evidence that the individuals responsible for making the decisions he contests were motivated by race or any other improper motive. Mengele further cannot adduce evidence that he would not have been retaliated against "but for" the reporting of his complaints against Jackson to upper management.  In short, Mengele has failed to meet his burden of demonstrating pretext, that race/natural origin was a "motivating factor" in any decision regarding his employment, or that any action would not have been taken against him but for a retaliatory motive.

## II.      SUMMARY JUDGMENT PROOF

4.      In support of the Motion for Summary Judgment, AT&T offers the following summary judgment evidence, true and correct copies of which are attached hereto:

**Exhibits:**[1]

**Exhibit A:** Affidavit of Amy M. Stewart.

**Exhibit B:** Deposition of Simon Mengele.

> Deposition Exhibit 2: Coaching Action Plan, a true and correct copy of which is attached to Exhibit B-1.

> Deposition Exhibit 3: Performance Improvement Plan, a true and correct copy of which is attached to Exhibit B-2.

> Deposition Exhibit 4:  Charge of Discrimination, a true and correct copy of which is attached to Exhibit B-3.

**Exhibit C:** Affidavit of Shannon Kilgore and incorporated herein by reference.  Ms. Kilgore is employed by AT&T as the Senior Technical Process/Quality for the Technical Development Program.

**Exhibit D:** Affidavit of David Brandvold and incorporated herein by reference.  Mr. Brandvold is employed by AT&T as the Vice President of Global Services and Technology Operations.

> Exhibit 1: E-mail dated May 13, 2015 from Brandvold to Mengele requesting his list of Complaints against Jackson, a true and correct copy of which is attached to Exhibit D-2

> Exhibit 2: E-mail dated May 14, 2015 from Mengele to Brandvold outlining Mengele's claims against Jackson, a true and correct copy of which is attached to Exhibit D-2

> Exhibit 3: E-mail dated May 14, 2015 from Brandvold to AT&T Human Resources Services Employee Relations Manager II, Linny Daniels, a copy of which is attached hereto as Exhibit D-3.

> Exhibit 4: E-mail dated May 20, 2015 from Brandvold to Jackson seeking her response to Mengele's claims, a true and correct copy of which is attached to Exhibit D-4.

---

[1] These Exhibits are attached to the Appendix in Support of Defendant's Motion for Summary Judgment and Brief in Support that was filed contemporaneously with this Motion.

Exhibit 5: E-mail dated June 10, 2015 from Brandvold to Human Resources approving termination, a true and correct copy of which is attached to Exhibit D-5.

**Exhibit E:** Affidavit of Reba Jackson.  Ms. Jackson is employed by AT&T as Area Manager, Lightspeed Capacity Management.

Exhibit 1: E-mail dated October 8, 2014 from Jackson to Mengele regarding TDP Expectation, a true and correct copy of which is attached to Exhibit E-1.

Exhibit 2: Mengele's 2014 Amplify Evaluation, a true and correct copy of which is attached to Exhibit E-2.

Exhibit 3: Calendar appointment for February 25, 2015 memorializing meeting with TDP-TO leadership to discuss Mengele's work performance, a true and correct copy of which is attached to Exhibit E-3.

Exhibit 4: Email dated March 2, 2015 e-mail memorializing Jackson's conversation is attached as Exhibit E-4 to this Affidavit.

Exhibit 5: Coaching Action Plan, a true and correct copy of which is attached as Exhibit E-5.

Exhibit 6: Performance Improvement Plan, a true and correct copy of which is attached as Exhibit E-6.

Exhibit 7: Email dated May 20, 2015 from Jackson to Brandvold, with attachments regarding her response to Mengele's claims, a true and correct copy of which is attached as Exhibit E-7.

### III.    STATEMENT OF UNDISPUTED FACTS

**A.    Mengele Worked in AT&T's Technology Development Program.**

1.    Mengele was a Senior Specialist Network Design Engineer in the Technology Development Program – Technology Operations ("TDP-TO"), a program for new college graduates.  Each year, AT&T hires a new class of participants consisting of science, technology, engineering, and math graduates and engages them in challenging jobs across Technology Operations and its partners.  TDP-TO participants spend somewhere between 18-24 months, depending on their start date, in their hiring position and then rotate to a second position which

they occupy for approximately 15 months.[2]

2.      During their three year tenure with the TDP-TO Program, participants are exposed to a wide variety of developmental opportunities, including small group interaction with local leaders, personalized development curriculum inclusive of leader led workshops, virtual training, and peer mentoring.[3]

**B.      Mengele Struggled in the TDP-TO Program Which Led to A Poor Evaluation.**

3.      On July 1, 2014, Jackson began working in the Area Manager Role supervising TDP engineers, such as Mengele, who worked in the Dallas region.  Jackson worked from San Antonio so she did not work in the same building as Mengele.[4]

4.      On July 15, 2014, Jackson noticed that Mengele was failing to come to work on time, was late to conference calls and meetings, and was not meeting the expectations of a Senior Specialist Network Design Engineer working in the first rotation of the TDP-TO program.[5]

5.      On July 29, 2014, Jackson met with Mengele to determine his work hours and provide coaching and training opportunities.[6]  At that time, Mengele showed concern regarding the efficacy of the group training.[7]  Jackson learned that Mengele was falling behind his colleagues in his skills development, so Jackson assigned Mengele to one-on-one skills training.[8]

6.      However, Mengele's performance and attendance issues did not improve.[9]  In August 2014, Jackson received complaints from internal clients regarding late jobs Mengele submitted and that certain projects were in jeopardy.[10]

---

[2] App. 37-38 ("Kilgore Affidavit"), ¶¶ 2-4.
[3] *Id.*
[4] App. 112-118 ("Jackson Affidavit"), ¶¶  1-2.
[5] *Id.* at ¶¶. 3-4.
[6] *Id.* at  ¶5.
[7] *Id.*
[8] *Id.*
[9] *Id.*  ¶. 6.
[10] *Id.*

7.      On August 12, 2014, Jackson met again with Mengele and removed certain projects so that he could focus on a specific task and hopefully become proficient.[11]  Afterwards, Jackson scheduled a call with Mengele and his colleagues to discuss the transition; however, Mengele was late to the call.[12]

8.      Several escalations continued throughout August and September 2014 as a result of Mengele's failure to meet work objectives.[13]  Because Mengele's excuse was normally that he was not trained properly, Jackson continued to provide Mengele with additional one-on-one training programs with the hope that it would improve his work performance.[14]

9.      On or about October 8, 2014, AT&T placed Mengele on a Written Reminder because he failed to meet his work expectations after numerous internal customer complaints.[15] Additionally, he was written up because he failed to show up for work at the required times.  He was also routinely late to meetings.[16]  Jackson advised Mengele that failure to comply would be considered insubordination and could result in disciplinary action, up to and including dismissal.[17]

10.     After the October 2014 Written Reminder, Jackson assigned Mengele special project tasks that suited his skill level.[18]  However, through November 2014-February 2015, Mengele was routinely late to team meetings, failed to respond to Jackson's questions regarding the status of the special projects, turned in his work late, and was inexcusably absent from work.[19]

---

[11] *Id.*at  ¶. 7.
[12] *Id.*
[13] *Id.* at  ¶. 8.
[14] *Id.*
[15] *Id.* at ¶.9; App. 168-169 (Exhibit E-1).
[16] *Id.*
[17] *Id.*
[18] *Id.* at ¶ 10.
[19] *Id.*

11.     On February 13, 2015, Mengele requested Jackson's permission to participate in calls with the team he would transition to for his second position in the TDP program.[20]  Jackson responded that would be a "very good idea."[21]

**C.     Mengele Receives His Evaluation.**

12.     On or about February 20, 2015, AT&T provided Mengele with his annual Amplify performance evaluation which set forth the same issues that were identified in the prior coaching conversations Jackson had with Mengele and the October 2014 Written Reminder.[22]  In regard to overall performance, the evaluation stated Mengele "me[t] some" of the requirements but also stated:

- Jackson did not see the drive, sense of ownership, or leadership that is expected out of capacity managers;
- In October 2014, Mengele's work on the L2 Lightspeed capacity management team had to be reassigned because of a large number of client escalations to management because Mengele was unable to individually support his internal clients.
- Mengele was transitioned to a special projects role; however, he still was unable to support that team;
- Mengele needed to take the initiative to quickly learn the L2/L3 functions and processes so he could return to his case management role.[23]

13.     Mengele vehemently disagreed with his evaluation.[24]  Jackson advised him to fill out the employee comments section of the evaluation where he could share his concerns so they could be submitted to Human Resources by the deadline.[25]

14.     Mengele did not turn in his Amplify evaluations to Human Resources by the deadline.[26]  When Jackson asked why there was a delay, Mengele told Jackson that he wanted to

---

[20] *Id.* at ¶ 11.
[21] *Id.*
[22] *Id.*, at ¶ 12, App. 123-128 (Exhibit E-2).
[23] *Id.*
[24] *Id.*, at ¶ 13.
[25] *Id.*
[26] *Id.* at ¶ 14.

talk to her supervisors, Polly Bessell or David Brandvold.[27] To her knowledge, Mengele did not speak to Bessell, or Brandvold.[28]

15. Because of Mengele's work performance issues, on February 24, 2015, Jackson met with Human Resources Manager, Linny Daniels ("Daniels"), and TDP-TO, Senior Tech, Shannon Kilgore ("Kilgore"), to discuss Mengele's performance issues and his pending rotation to a new role.[29] Collectively, the group decided to place Mengele in a formal Coaching Action Plan ("CAP"), the normal practice used to assist other TDP-TO engineers, so Mengele could improve his skills before transitioning to his new role.[30]

16. The next day, Jackson met with Mengele again about his failure to turn in his evaluation.[31]

17. On February 26, 2015, Jackson, Kilgore, Daniels, and TDP-TO's Senior Technical Process/Quality, Sky Pattavina ("Pattivina"), met with Mengele regarding the company's decision to hold his rotation for thirty days to provide additional coaching to help his performance improve.[32] The group stressed that he could rotate into his new role after successfully completing the CAP.[33]

**D. AT&T Institutes a Coaching Action Plan and Performance Improvement Plan to Help Mengele Meet His Obligations.**

18. AT&T uses CAPs and PIPs to improve the work performance of engineers in the TCP-TO program.[34] Other engineers in the TDP-TO program, for example, past TDP engineers, Shabinabanu Mansuri (Middle Eastern female), Doug Krussel (Caucasian male), Eric Wroble

---

[27] *Id.*
[28] *Id.* ¶ 15.
[29] *Id.* ¶ 16.
[30] *Id.*
[31] *Id.* ¶ 17; App. 132-137 (Exhibit E-4).
[32] App. 37-39 (Exhibit C), ¶¶ 5-7.
[33] *Id.*
[34] *Id.* ¶ 6.

(Caucasian male) have all participated in the CAP process to improve their skill set prior to transitioning to new roles.[35]   Unfortunately, Mansuri was not allowed to rotate to her next position because she failed to successfully complete the CAP.[36]

19.    Accordingly, AT&T placed Mengele on a thirty-day CAP to improve his skills before transitioning to the second rotation.  The CAP was initiated on March 2, 2015 and outlined performance areas, expectations, actions steps, and how his success would be measured.[37]

20.    Throughout the CAP process, customers continued to complain about Mengele's work performance, he failed to submit action plans in a timely manner, projects were delayed, and he was late to scheduled meetings and conference calls.[38]

21.    After Mengele failed to meet the expectations set forth in the CAP, on or about April 22, 2015, AT&T placed Mengele on a thirty-day PIP.[39]  The PIP was set to end on May 21, 2015.  Again, the PIP clearly provided the same objectives set forth in the CAP.[40]

22.    Unfortunately, Mengele failed to improve.  The progress review notes establish that he continued to be late, he failed to meet deadlines, and failed to perform tasks were assigned to him.[41]

**E.    Mengele Requested to See Jackson's Manager Regarding His Evaluations.**

23.    Two weeks before the PIP was set to conclude, Mengele finally requested to meet with Brandvold, who had oversight obligations over his TDP-TO team.[42]   On May 6, 2015,

---

[35] *Id.*
[36] *Id*.
[37] App. 16-23 (Exhibit B-1); App. 117 (Exhibit E),  ¶ 19; App. 139-142 (Exhibit E-5).
[38] App. 19-23.
[39] App. 16-23; App. 117, ¶ 20, App. 144-152 (Exhibit E-6).
[40] Compare App. 16-23 and 28-33.
[41] App. 28-33.
[42] App. 41-43 (Exhibit D), ¶ 2.

Mengele met Brandvold and discussed his claims that Jackson was treating him unfairly because he was African and that she intentionally gave him a negative review, and placed him on a CAP and PIP so he could not rotate to the next TDP position.[43]   Additionally, he alleged that certain statements in the CAP and PIP were incorrect.[44]   During the course of Brandvold's investigation into Mengele's claims, he spent eight hours talking with Mengele.[45]

24.     During the first conversation, Mengele asked to submit his complaints in writing so he could show "proof" of his allegations against Jackson ("Mengele Complaints").[46] Brandvold accepted the offer.[47]

25.     After not receiving his complaints in writing, on May 13, 2015, Brandvold followed up with Mengele via e-mail to request the Mengele Complaints.[48]

**F.     Mengele's Claims Are Investigated.**

26.     On May 14, 2015, Mengele e-mailed Brandvold his Complaints.[49]   The same day, Brandvold forwarded the Complaints to Human Resources to investigate.[50]

27.     On May 19, 2015, Brandvold requested that Jackson respond to Mengele's claims against her and to provide documentation to support her findings related to Mengele's poor work performance and attendance issues.[51]

28.     On March 20, 2015, Jackson e-mailed her response to the Mengele Complaints. ("Jackson Response"), which included a chronology of the issues involving Mengele's attendance and work performance issues; direct responses to Mengele's allegations; spreadsheet

---

[43] *Id.* ¶ 3.
[44] *Id.*
[45] *Id.*
[46] *Id.* at  ¶ 4.
[47] *Id.*
[48] *Id.* at ¶ 5; App. 45-46 (Exhibit D-1).
[49] *Id.* ¶¶. 6-8.
[50] *Id.*
[51] *Id.* ¶ 9; App. 48-80 (Exhibit D-2).

of the excessive amount of training Mengele received; and records of discussions with Mengele regarding the AT&T's decision to hold rotation until after he completed the CAP.[52]

29.     For example, Mengele misrepresented that Jackson "honored [his] request for early rotation to new team.[53]  As the e-mail states, Jackson did not permit Mengele to rotate to his new role in TCP-TO, but allowed him to listen in on team calls.[54]  Also, Kilgore, not Jackson, manages TCP-TO rotations.[55]  Additionally, Mengele misrepresented that Jackson was "so upset to know [Mengele] will report her to the leaders and she was so mad at [Mengele] from that day."[56]  However, Jackson actually suggested that Mengele add his thoughts and displeasure regarding her comments to the Employee Comment Section of the Amplify evaluation that goes directly to Human Resources and upper management.[57]

30.     On May 21, 2015, Brandvold called Mengele to gain clarification on the Written Complaints, specifically, the allegations in the CAP and PIP.

31.     Additionally, Brandvold requested Human Resources to investigate Mengele's allegation that another TDP-TO employee of African descent, Chris Okeyu, was also discriminated against by Jackson as well.[58]  The investigation determined that Okeyu was terminated for violating the Code of Business Conduct when he stated to Jackson that he would not follow her direct order to report to work at a specified time as well as other grounds.[59]

### G.     AT&T Terminates Mengele's Employment Because He Fails to Improve His Work Performance and Attendance Issues and He Files an EEOC Claim.

32.     On or about May 27, 2015, AT&T determined that Mengele failed to meet the

---

[52] *Id.* ¶ 10; App. 85-108 (Exhibit D-4); App. 114-118 (Exhibit E), ¶ 22; App. 154-177 (Exhibit E-7).
[53] App. 48-80
[54] App. 114-118,  ¶ 11.
[55] App. 37-39, ¶2
[56] App. 48-80
[57] App. 154-177.
[58] App. 41-43,  ¶ 8.
[59] *Id.*

expectations set forth in the PIP and he was terminated on July 11, 2015. [60]

33.     At the conclusion of his investigation, on June 9, 2015, Brandvold approved the decision by Human Resources and the TDP-TO team to terminate Mengele's employment because of his well-documented history of poor work performance and attendance issues.[61]

34.     On or about September 9, 2015, Mengele filed a claim with the EEOC and stated:

> He was placed on a coaching action plan on or around March 2, 2015, then a performance improvement plan on or around April 22, 2015 and subsequently discharged after I complained about comments that my supervisor made on my performance evaluation. I was discharged on June 11, 2015."[62]

Additionally, Mengele alleges he was retaliated against "for complaining about my supervisors comments on my performance evaluation.  At his deposition, Mengele alleged the following related to his claims of retaliation and discrimination:

> Q. Okay. So it states, "My former employer discriminated against because of national origin as well as retaliated against me.  I was wrongfully terminated on June 11, 2015, from my employment."  Have you provided us with factual basis for your allegations here?  Have you told us everything Ms. Jackson did that you believe shows that she discriminated and/or retaliated against you?
>
> A. [Mengele] Oh, she – she – she retaliated because – she retaliated because, I mean, after Ms. – Ms. Jackson, she learn that – I mean, I wanted to file – I mean, file complaint to the – the next level, she's – she started acting all this stuff right here, like all this Coaching Action Plan and – and – other stuff that happened because she learned that I went – I went and report to – to – to the higher management and ethics group about what happen here.[63]

Additionally, Mengele stated in his deposition that Jackson discriminated and retaliated against him "on February 26, 2015 [Jackson] came up to me to … block me no to go to my next assignment, rotation."[64]

---

[60] App. 110-112 (Exhibit D-5).
[61] App. 41-43, ¶ 11; App. 110-112.
[62] App. 35 (Exhibit B-3).
[63] App. 9-10, p. 65, ll 14-25; pg. 66, ll. 1-5.
[64] App. 11, p. 102, ll. 1-2.

## IV.   SUMMARY JUDGMENT- STANDARD OF REVIEW

According to the Fifth Circuit Court of Appeals:

> Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. In an employment discrimination case, we focus on whether a genuine issue exists as to whether the [D]efendant intentionally discriminated against the [P]laintiff. Needless to say, unsubstantiated assertions are not competent summary judgment evidence.

*Grimes v. Tex. Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-140 (5th Cir. 1996) (internal citations omitted); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."); *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 329 (5th Cir. 1994); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994); *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993) ("Summary judgment, to be sure, may be appropriate, '[e]ven in cases where elusive concepts such as motive or intent are at issue[]...if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.' ") (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266 (5th Cir. 1991)). At best, Mengele's claims are supported solely by his own unsubstantiated assertions and subjective beliefs; therefore, AT&T is entitled to summary judgment as to all of Mengele's claims.

## V.   LEGAL ARGUMENTS AND AUTHORITIES

**1. Plaintiff cannot prevail on his race/national origin discrimination claim.**

It appears Mengele is asserting that two "adverse employment actions" occurred: (1) Jackson "blocking" his rotation to the next position in the TDP-TO program after he threatened to tell upper management about his false evaluation ("Rotation Blocking Claim"); and (2) he was

terminated because he reported Jackson's improper bias against him ("Termination Claim").[65] Both claims will be addressed in this analysis.

To establish a prima facie case of race/national origin discrimination, Plaintiff must prove that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment action; and (4) other similarly situated employees, who were not from his protected class, were treated more favorably.  See *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

### A.     Mengele Was Not Qualified As The Senior Specialist Network Design Engineer.

Mengele cannot establish his prima facia case of discrimination under either the Termination Claim or Rotation Blocking Claim because he cannot prove he was qualified for the position.  The evidence establishes that Jackson was receiving ongoing escalations from internal clients related to Mengele's failure to fulfill his tasks successfully, which in turn jeopardized the team's ability to meet deadlines.[66]  As a result, AT&T provided Mengele with group training, and later, individualized one-on-one training, to provide him the support to improve his skills and be successful.[67]  However, over a ten-month period, the additional training was not solving the issue as customers continued to complain regarding Mengele's work performance and untimeliness.[68]

### B.     There Is No Evidence Others Not In The Protected Class Were Treated More Favorably.

---

[65] App. 35.
[66] App. 114-118; App. 119-177; App. 41-43; App. 44-112; App. 15-33.
[67] App. 100-103.
[68] App. 114-118; App. 119-177; App. 41-43; App. 44-112; App. 15-33.

Further, Mengele cannot prove that other similarly situated employees, who were not from his protected class, were treated more favorably.  Mengele failed to identify in response to Initial Disclosures, Interrogatories, or Requests for Production any other TDP-TO engineers who were similarly situated to him who were treated more favorably.

In fact, the evidence establishes that other TDP Engineers who failed to meet their work obligations were also placed on CAPs so they could improve their performance prior to transitioning laterally to new roles—Mansuri, Krussel, and Wroble.[69]   Additionally, an engineers, for example, Mansuri, were not allowed to rotate to the second position because they did not successfully complete their CAP.[70]  As is readily apparent, Mengele cannot prove that similarly situated employees outside of his protected class were treated more favorably than him.

### C.  Alternatively, AT&T's Decision To Place Mengele's Rotation On Hold Until He Improved His Performance Is Not Redressible Under Title VII.

Mengele's Rotation Blocking Claim is not addressable under Title VII.  It is well established that the denial of a purely lateral transfer is not an "adverse employment action" redressible under Title VII.  *Alvarado v. Texas Rangers*, 492 F.3d 605 (2007) *citing See Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir.1999) ("Refusing an employee's request for a purely lateral transfer does not qualify as an ultimate employment decision [actionable under Title VII].").  Additionally, placing employees on a "Coaching Action Plan" or "Performance Improvement Plan" do not constitute adverse employment actions under Title VII because such actions do not affect the employee's job duties, compensation, or benefits.  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309 (5th Cir.2004); *McFall v. Gonzales*, 2005 WL 1926521 (5th Cir.2005) (whether or not an action constitutes an adverse employment action cannot be based upon an employee's subjective belief that he suffered such an action, but rather on a

---

[69] App. 37-39, ¶ 6.
[70] *Id.*

determination that the employer's decision was objectively equivalent to a demotion, either in form or substance)); *Cannon v. St. Paul Fire & Marine Ins. Co.*, 2005 WL 1107372, at *3 (N.D. Tex. May 6, 2005) ("Ultimate employment decisions' include acts 'such as hiring, granting leave, discharging, promoting, and compensating."); *Garrett v. Celanese Corp.*, 2003 WL 22234917, at *3 (N.D. Tex. Aug. 28, 2003), aff'd, 102 Fed. Appx. 387 (5th Cir. 2004) ("The Fifth Circuit has specifically held that placing an employee on a performance improvement plan alone is not an 'ultimate employment decision.'").

Mengele alleges that his supervisor "blocked" his rotation to the second position in the TDP-TO program after Mengele threatened to report that she gave him a poor evaluation because he was African. The TDP-TO program provides its participants two positions over the three year program.[71]   The rotations are lateral positions within the program, and therefore, are not a promotion.[72]   Accordingly, AT&T's decision to hold his rotation is not actionable because Mengele's request would have been a "purely lateral transfer" to the second position in the TDP-TO program, which does not qualify as an "ultimate employment decision."   Further, placing Mengele on a CAP or PIP is also not an "ultimate employment action" redressible by Title VII. On these grounds, Mengele's claim should be dismissed.

### D.  AT&T Had a Legitimate Non-Discriminatory Reason for Terminating Mengele.

Even assuming, *arguendo*, that Mengele could establish a prima facie case of race/national origin discrimination for his Termination and Rotation Blocking Claims, he still cannot prevail.  AT&T may rebut any inference of discrimination by proffering a legitimate, non-discriminatory reason for taking the action in question.  *Medina*, 238 F.3d at 681; *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.3 (2003); *Tex. Dept. of Cmty. Affairs v. Burdine*,

---

[71] App. 37-39, ¶¶ 2-3.
[72] *Id.*

450 U.S. 248, 254 (1981); *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).  Once this is

done, the burden of proof shifts back to Mengele to demonstrate not only that AT&T's proffered

reason was false, but also that race/national origin was the true reason for the challenged action.

*Medina*, 238 F.3d at 681*; St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (holding that

a "reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the

reason was false, and that discrimination was the real reason") (emphasis added).

The law in the Fifth Circuit is clear.  An employee's statement of subjective belief is

insufficient to overcome an employer's production of an explanation for its actions:

> It is more than well-settled that an employee's subjective belief that he suffered
> an adverse employment action as a result of discrimination, without more, is not
> enough to survive a summary judgment motion[] in the face of proof showing an
> adequate non-discriminatory reason [for the adverse employment action]."

*Douglass*, 79 F.3d at 1430; *Grimes*, 102 F.3d at 140-41; *Grizzle*, 14 F.3d at 268; *Krim*, 989 F.2d
at 1449; *Portis*, 34 F.3d at 329.

AT&T has produced a legitimate, non-discriminatory reason for stalling Mengele's

rotation to the next TCP-TO role and terminating him. Mengele received a significant number of

customer complaints over a ten month work period and was habitually late.[73]  Additionally,

during the period of time when he was on a CAP and PIP, he was routinely late to meetings and

failed to meet the expectations set forth in the CAP and PIP.[74]  Moreover, what AT&T

discovered in its investigation was that even when objective data was provided to Mengele to

establish he was failing to meet expectations, *i.e.* customer complaints, Mengele refused to take

any responsibility for his actions and consistently blamed others for his shortcomings.[75]  Indeed,

even the e-mails that he provided as "proof" of discrimination establishes that Jackson was

supporting Mengele and coaching him through his work issues, but he refused to heed the advice

---

[73] App. 114-118; App. 119-177; App. 41-43; App. 44-112; App. 15-33.
[74] App. 16-33.
[75] App. 48-49.

and take advantage of the training.[76] Moreover, the repeated customer complaints of the scope and nature submitted against Mengele *alone* demonstrate that AT&T's decision to hold his rotation and ultimately terminate him was based on the severity of the complaints and poor work performance not Mengele's race or national origin. Simply put, Mengele cannot demonstrate that AT&T's proffered reason for holding his rotation and termination was false, **or** that race/national origin was the true reason Mengele was held from rotating to the new position or terminated.

### 2. Mengele cannot prevail on his retaliation claim.

In order to establish a prima facie case of retaliation, Plaintiff must prove that: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *Septimus v. Univ. of Houston,* 399 F.3d 601, 610 (5th Cir. 2005).

Again, Mengele appears to be arguing two grounds of retaliation: (1) Jackson retaliated against him by "block[ing]" his rotation to the second position in the TDP-TO program and placing him on a CAP after he threatened to tell her managers she was discriminating against Africans; and (2) Jackson retaliated against him by terminating his employment after he reported her bias against Africans to Brandvold in May 2016. Both arguments lack merit.

First and foremost, the Rotation Blocking Claim is not redressible under Title VII because AT&T's decision not to honor his early request for a lateral transfer within the TDP-TO program and/or placing Mengele on a CAP or PIP prior to allowing the transfer is not an "ultimate adverse employment action." Alternatively, there is no evidence that Jackson "block[ed]" Mengele from transitioning to his new role. Instead, the transition was only delayed to allow Mengele the opportunity to improve his skills so he could be successful. Additionally,

---

[76] App. 48-80.

there is no causal link between Mengele's threat to go to Jackson's managers and the TDP-TO's ultimate decision that Mengele should successfully complete a CAP program before rotating to his new role.

As for the Termination Claim, Mengele cannot show any causal link between his termination and his report to Brandvold.  Mengele reported his claims against Jackson to Brandvold on May 6, 2015.[77]  At that time, the decision to hold his rotation had been made months prior, Mengele had already failed to meet the CAP's expectations, and only had two weeks left on the PIP.[78]  At the time of Mengele's report, he was failing to meet the plan's objectives based on the progress reports when he contacted Brandvold.[79]  Additionally, Brandvold, not Jackson, was the ultimate decision maker who determined Mengele had a well-documented history of poor performance and he failed to meet his work obligations set forth in the CAP, then the PIP, and should be terminated.[80]  Accordingly, Mengele's retaliation claim lacks merit.

### 3.  AT&T Can Rebut Mengele's Inference of Retaliation.

Even assuming, *arguendo*, that Mengele could establish his prima facie case of retaliation, he still cannot prevail.  AT&T may rebut any inference of retaliation by proffering a legitimate, non-discriminatory reason for taking the action in question.  *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003).  Once again, the burden shifts back to Mengele to demonstrate not only that AT&T's proffered reason was false, but also that engaging in a protected activity was the true reason for the challenged action.  *See id.; St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

---

[77] App. 41-43, ¶ 3.
[78] App. 16-33.
[79] *Id.*
[80] App. 41-43, ¶ 11.

As set forth previously, Mengele was terminated because of longstanding and well documented lack of quality in his work performance which resulted in a large number of internal customer complaints over a ten-month period.[81]   AT&T attempted to assist Mengele to be successful by providing one-on-one training, initiating CAP, then a PIP so he could improve his skills.[82]  Unfortunately, Mengele did not take advantage of these opportunities.  As Mengele has produced no evidence that the retaliation was intentional or pretextual, summary judgment should be granted for AT&T. *West*, 330 F.3d at 384-385.

## VI.   PRAYER

Wherefore, premises considered, AT&T respectfully requests that this Court grant this Motion for Summary Judgment and Brief in Support and dismiss all of Plaintiff's claims with prejudice, and grant it such other and further relief, both at law and in equity, to which it may be justly entitled.

---

[81] App. 114-118; App. 119-177; App. 41-43; App. 44-112; App. 15-33.
[82] *Id*.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document on March 24th, 2017, with the Clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  The electronic case filing system automatically generated a "Notice of Electronic Filing," to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

Simon Mengele (via CMRRR and First Class Mail)
6416 Academy Ln.
Plano, TX 75074

_/s/ Amy M. Stewart_____
Amy M. Stewart