IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SIMON MENGELE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-3934-B |
| | § | |
| AT&T SERVICES INC., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Defendant AT&T Services, Inc. ("AT&T") has filed a motion for summary judgment, *see* Dkt. Nos. 42, 43, & 44, which United States District Judge Jane J. Boyle has referred to the undersigned United States magistrate judge for hearing, if necessary, and recommendation or determination, *see* Dkt. No. 47 (citing 28 U.S.C. § 636(b)). Plaintiff Simon Mengele, proceeding *pro se* and *in forma pauperis* ("IFP"), *see* Dkt. No. 7, was ordered to respond to the motion no later than May 17, 2017, and AT&T was allowed until June 1, 2017 to file a reply brief. *See* Dkt. No. 52. But neither a response nor a reply was filed. The undersigned now issues the following findings of fact, conclusions of law, and recommendation that the Court should grant the motion for summary judgment and dismiss this action with prejudice.

**Applicable Background**

Mengele was employed by AT&T as a Senior Specialist Network Design Engineer in the Technology Development Program – Technology Operations ("TDP"),

a program for new college graduates with degrees in science, technology, engineering, or math, through which the employees start in a position for 18 months to two years and then rotate to a second position for another 15 months. *See* Dkt. No. 44-3, ¶¶ 2-4.

Mengele alleges that AT&T discriminated against him based on his "national origin as well as retaliated against him." Dkt. No. 3 at 1; *see id.* at 2 (attached, verified EEOC charge of discrimination in which Mengele alleges that he "was placed on a coaching action plan on or around March 2, 2015, then a performance improvement plan on or around April 22, 2015 and subsequently discharged[, on June 11, 2015,] after [complaining] about comments that [his] supervisor made on [his] performance evaluation"; states that he "was told by [his] supervisor[ – Reba Jackson – ]on May 21,2015 that [he] failed the coaching action plan and performance improve plan and would be terminated"; and claims that he "was discriminated against because of [his] national origin/African as well as retaliated against ... for complaining about [his] supervisor['s] comments on [his] performance evaluation"); *see also* Dkt. No. 16 at 6-10 (sworn responses to a court-issued questionnaire setting out further details supporting the claims, which, as applicable, have been incorporated into the analysis below).

AT&T moves for summary judgment on the basis that Mengele "was terminated due to his well documented and long standing poor performance" – "Mengele failed to timely turn in work assignments, internal clients complained about his work product, and he was routinely late to team meetings and conference calls." Dkt. No. 43 at 6; *see* Dkt. Nos. 44-3, 44-4, & 44-5 (affidavits of supervisors with attached documentation). AT&T interprets Mengele's discrimination claims as being based on allegations (1) that

"the company delayed his lateral move to a new position until he successfully completed a Coaching Action Plan ... and Performance Improvement Plan" and (2) that he "was terminated after he complained to management that his direct supervisor's negative evaluations were based on her bias against Africans, not his actual work performance." Dkt. No. 43 at 6. AT&T asserts that Mengele can prove neither this claim nor his related retaliation claim.

**Legal Standards**

Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)). The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma*

*Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

"Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in

any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

While Mengele has not responded to the motion for summary judgment, the verified complaint and sworn interrogatory answers of a *pro se* litigant can be

any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

While Mengele has not responded to the motion for summary judgment, the verified complaint and sworn interrogatory answers of a *pro se* litigant can be

any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

While Mengele has not responded to the motion for summary judgment, the verified complaint and sworn interrogatory answers of a *pro se* litigant can be

considered as summary judgment evidence to the extent that such pleadings comport with the requirements of current Rule 56(c). *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."). Here, attached to Mengele's complaint is a verified charge of discrimination. *See* Dkt. No. 3 at 2. And he has submitted sworn responses to the interrogatories set out in the Court's June 24, 2016 Notice of Deficiency and Order. *See* Dkt. No. 16.

Verified responses to interrogatories issued to "[t]o aid in the determination of whether an IFP complaint is frivolous," "become part of the plaintiff's pleadings," *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996)), and can provide evidence that could defeat a motion for summary judgment, *see, e.g., Houda v. Jupiter Chevrolet*, No. 3:05-cv-1418-D, 2006 WL 3531286, at *7 (N.D. Tex. Dec. 7, 2006) ("In the instant case, Plaintiff's response to the Magistrate Judge's Questionnaire provides sufficient evidence to create a genuine issue of material fact of whether Plaintiff suffered race and age-based discrimination.").

<u>Discrimination and Retaliation</u>

"Title VII prohibits discrimination 'because of' a protected characteristic, including," as applicable here, national origin. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216, 219 (5th Cir. 2016) (citing 42 U.S.C. § 2000e-2(a)(1)). That statute similarly prohibits retaliation because an employee engages in protected activity. *See* 42 U.S.C. § 2000e-3(a); *Starnes v. Wallace*, 849 F.3d 627, 635 (5th Cir. 2017) ("[T]he ultimate

question in a retaliation case [is] 'whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in' protected conduct." (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996))).

In the absence of direct evidence of discrimination or retaliation, claims under Title VII are analyzed under the framework set out by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Outley*, 840 F.3d at 216, 219. Under that framework, a plaintiff must establish a prima facie case of discrimination or retaliation before the case may proceed. *See McCoy*, 492 F.3d at 556.

To establish a prima facie claim of discrimination, a plaintiff must show that he

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Id.* at 556 (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)); *Outley*, 840 F.3d at 216.

And a plaintiff establishes a prima facie case of retaliation under Title VII by showing that (1) he engaged in an activity protected under the statute; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *See McCoy*, 492 F.3d at 557; *Outley*, 840 F.3d at 219. To establish the causation prong, "'the employee should demonstrate that the employer knew about the employee's protected activity.' Generally, this requires some showing that the decisionmaker – the individual 'who actually made the decision or

caused the decision to be made' – was aware of the activity.'" *EEOC v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017) (further noting that this "awareness may be established by circumstantial evidence"; citations omitted).

> If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. The employer's burden is only one of production, not persuasion, and involves no credibility assessment. If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.

*McCoy*, 492 F.3d at 557 (footnotes omitted); *see, e.g., Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 827-28 (5th Cir. 2015) (affirming the district court's recognition that, even where a plaintiff establishes a prima facie case, an employer "would nevertheless be entitled to summary judgment if it 'articulated a legitimate, nondiscriminatory ... reason for its employment action' and [the plaintiff] could not show a triable issue of fact as to whether 'the employer's proffered reason is not true but instead is a pretext' for a discriminatory purpose" (quoting *McCoy*, 492 F.3d at 557; original brackets omitted)).

## Analysis

To begin, Mengele alleges, through sworn responses to the Court's questionnaire, that he confronted Jackson during an October 8, 2014 phone call, telling "her [that he] heard from other employee[s] about her intention to target African[s] and [statement that] we African[s] must go," accusations she denied. Dkt. No. 16 at 7. These statements by unidentified employees cannot be considered direct evidence of

discrimination because they are hearsay and Mengele has not argued (and the undersigned cannot find) that the statements are admissible under an exception to the rule against hearsay – for example, as an admission by a party opponent, as Mengele admits that Jackson denied the accusations. *See, e.g., Knox v. City of Monroe*, Civ. A. No. 07-606, 2009 WL 57115, at *6-*7 (W.D. La. Jan. 8, 2009) (rejecting as "'direct' evidence of discrimination" several hearsay statement, including the white plaintiff's "testimony that 'several people' talked about [supervisor's] alleged plan to move [a black employee] into [plaintiff's] position"); *cf. Lall v. Perot Sys. Corp.*, No. 3:02-cv-2618-P, 2004 WL 884438, at *9 (N.D. Tex. Apr. 23, 2004) (holding that uncorroborated statements by other, identified employees that employer "was engaging in a pattern of systematically terminating older workers" constituted, "[a]t best," "extremely weak corroborative evidence of discriminatory motive"; that the statements "alone [were] not sufficient to raise a fact issue as to [pretext]"; and that "the statements constitute[d] inadmissible hearsay that the Court cannot consider as competent summary judgment evidence").

Turning to whether Mengele has alleged a prima facie case of discrimination, even if the Court accepts that he has established the first three requirements – that he, as a member of a protected class who "was qualified for the position at issue," suffered an adverse employment action – Mengele has not shown that he "was treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556.

As to this final prong, Mengele alleges through sworn questionnaire responses

that Jackson "was assigned to supervise 3 TDP candidates, Chris Oyeku, Joseph Esau and [Mengele]"; that "Oyeku and [Mengele] have African background but not ... Esau"; that Oyeku "told [him] how [Jackson] discriminated and harassed him at the workplace"; that, after Oyeku "reported her to HR[,] he was terminated the same day"; and that Esau "continued to receive training and other TDP benefits from the company." Dkt. No. 16 at 6-7.

These verified responses, however, do not demonstrate – and Mengele otherwise has not shown – that Esau is a proper comparator. *See Noble v. Lear Siegler Svcs., Inc.*, 554 F. App'x 275, 276 (5th Cir. 2014) (per curiam) (rejecting an African-American plaintiff's claim that he established this prima facie element by asserting that "five Caucasian men in his unit kept their jobs" because he failed to "show that these comparators were under 'nearly identical circumstances'" by presenting "evidence regarding the comparators' job descriptions, qualifications, experience, work and disciplinary history, or other information that would indicate that they were similarly situated" (quoting *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001))); *Reyna v. Donley*, 479 F. App'x 609, 611-12 (5th Cir. 2012) (per curiam) ("An employee must proffer a comparator who was treated more favorably 'under nearly identical circumstances,' which is satisfied when 'the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009))).

Because Mengele cannot establish a prima facie claim of national-origin discrimination, AT&T is entitled to judgment as a matter of law as to this claim.

As to his claim of retaliation, Mengele alleges – again, through sworn questionnaire responses – that, after he "was not allowed to rotate for the second assignment per the TDP program," he "filed a discrimination complaint with" AT&T's human resources and ethics departments "and emailed organization vice president David Brandvold." Dkt. No. 16 at 9. According to Mengele, after Jackson "discovered that [he] complained with Ethics, HR and organization VP" she "subjected [him to a] hostile work environment, intimidated and emotional[ly] harassed [him] for more than 3 months," ultimately placing him on a coaching plan and then terminating him. *Id.* at 9-10. AT&T addresses the contacts with Brandvold concerning Mengele's claims. *See generally* Dkt. Nos. 43 & 44. Mengele's verified allegations, however, can be liberally construed to indicate that, in addition to contacting Brandvold, Mengele filed separate discrimination complaints with human-resource and ethics officials. *Cf. Moore v. Delta Airlines, Inc.*, No. 3:10-cv-2241-K, 2012 WL 685414, at *9 (N.D. Tex. Mar. 1, 2012) ("[I]nternal complaints of discrimination can qualify as protected activity.").

But, even if Mengele did, and even if he has stated a prima facie claim of retaliation, AT&T has articulated a legitimate, nonretaliatory reason for preventing Mengele from progressing in the training program, placing him on a coaching plan, and ultimately terminating him: the severity of customer complaints against Mengele and his poor work performance. *See* Dkt. Nos. 44-3, 44-4, & 44-5. And Mengele has not attempted to show that these reasons are pretexts for discrimination. AT&T is

therefore entitled to judgment as a matter of law as to this claim. *See McCoy*, 492 F.3d at 557; *Ortiz*, 806 F.3d at 827-28.

**Recommendation**

The Court should grant the motion for summary judgment [Dkt. No. 42] and dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 9, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE